STATE OF NORTH CAROLINA v. ROSA WESSON

No. 722SC601

(Filed 20 December 1972)

1. **Indictment and Warrant § 9— sufficiency of warrant or indictment to withstand motion to quash**

   In order to withstand a timely motion to quash, a warrant or indictment must allege the essentials of the offense charged in a plain and explicit manner so as to (1) identify the offense, (2) protect the accused from being twice put in jeopardy for the same offense, (3) enable the accused to prepare for trial, and (4) support the judgment upon conviction or plea of guilty.

2. **Larceny § 3— larceny as misdemeanor or felony**

   Under North Carolina law, except in those instances where G.S. 14-72 does not apply, whether a person is guilty of a felony or guilty of a misdemeanor depends on whether the stolen property exceeds the value of $200.

3. **Indictment and Warrant § 9— misdemeanor charge — use of word "feloniously"**

   It is not essential to use the word "feloniously" in a warrant charging a misdemeanor.

4. **Larceny § 1— felonious intent as element of crime**

   "Felonious intent" is an essential element of the crime of larceny without regard to the value of the stolen property.

5. **Larceny § 1— felonious intent defined**

"Felonious intent" as applied to the crime of larceny is the intent which exists where a person knowingly takes and carries away the personal property of another without any claim or pretense of right with the intent wholly and permanently to deprive the owner of his property and to convert it to the use of the taker or to some other person than the owner.

6. **Criminal Law § 111— instructions — felonious intent**

What is meant by "felonious intent" is a matter for the court to explain to the jury and no exact words are required to instruct the jury as to its meaning.

7. **Larceny § 4— steal as synonymous with felonious intent — sufficiency of warrant to withstand motion to quash**

Where the warrant in a larceny case alleged that the defendant did "unlawfully, wilfully, steal, take and carry away" the described property, it was not necessary to allege that defendant intended to convert the property to her own use; rather, the word "steal" as used in the warrant charging misdemeanor larceny encompassed and was synonymous with the required "felonious intent" and was therefore sufficient to withstand defendant's motion to quash.

8. **Courts § 7; Criminal Law § 18— appeal from district court to superior court**

The jurisdiction of the superior court on appeal from a conviction in district court is derivative, and defendant may not be tried *de novo* in the superior court on the original warrant without a trial and conviction in the district court.

9. **Courts § 7; Criminal Law §§ 18, 134— appeal from district court to superior court — failure of district court expressly to determine defendant's guilt**

Where the record in a larceny case showed that there was a trial, a judgment, and notice of appeal given in the district court, defendant was convicted in district court within the meaning of G.S. 7A-290, thereby giving the superior court jurisdiction, though that portion of the blank form of the judgment relating to the disposition of the matter entered in district court was not filled out and did not contain an express determination of defendant's guilt.

10. **Criminal Law § 134— necessity for express adjudication of conviction or finding of guilt**

An express adjudication of conviction or finding of guilt is not necessary if it is apparent from other matters in the record that the court made a judicial determination of conviction or guilt.

APPEAL by defendant from *Cohoon, Judge,* 8 March 1972 Session of Superior Court held in MARTIN County for the trial of criminal cases.

Defendant was arrested on 17 July 1971 pursuant to a warrant charging her with the larceny of a 3½ horsepower lawn

mower of the value of $61.95, the property of Martin Supply Co., Inc., Williamston, North Carolina. The cause was tried in district court upon the warrant and from a judgment of imprisonment, defendant appealed to superior court for trial de novo. The trial in the superior court was also upon the warrant. At the trial of the cause in superior court, the defendant moved to quash the warrant on the grounds that it did not charge a crime and on the grounds that there was no verdict in the district court. Both motions were denied.

The evidence for the State tended to show that the defendant had taken the lawn mower from a display at the front of the store of Martin Supply Co., Inc., and transported it to her residence in a taxicab, where she then concealed the lawn mower under a house occupied by another person. Defendant offered no evidence.

The jury returned a verdict of guilty of misdemeanor larceny, a violation of G.S. 14-72(a), and judgment was entered upon the verdict sentencing defendant to eighteen (18) months in prison. Defendant appealed, assigning error.

*Attorney General Morgan and Associate Attorney Haskell for the State.*

*John H. Harmon for defendant appellant.*

MALLARD, Chief Judge.

Defendant presents two questions on appeal. Initially, defendant contends that the warrant upon which she was tried in district court and in superior court was fatally defective in that there was no allegation in the warrant that defendant committed the alleged theft with the specific felonious intent to permanently deprive the owner of his property or to convert the property to the defendant's own use.

The pertinent portions of the challenged warrant read as follows:

". . . (T)hat at and in the County named above and on or about the 22nd day of June, 1971, the defendant named above did unlawfully, wilfully, steal, take, and carry away one 1-310-22 inch, 3½ H.P. lawn mower . . . the personal property of Martin Supply Co., Inc., . . . such property having a value of $61.95. The offense charged here

was committed against the peace and dignity of the State and in violation of law G.S. 14-72(a)."

[1] In order to withstand a timely motion to squash, a warrant or indictment must allege the essentials of the offense charged in a plain and explicit manner so as to (1) identify the offense, (2) protect the accused from being twice put in jeopardy for the same offense, (3) enable the accused to prepare for trial, and (4) support the judgment upon conviction or plea of guilty. *State v. Sparrow*, 276 N.C. 499, 173 S.E. 2d 897 (1970), *State v. McBane*, 276 N.C. 60, 170 S.E. 2d 913 (1969).

[2] At common law, the larceny of personal property of any value was a felony. *State v. Benfield*, 278 N.C. 199, 179 S.E. 2d 388 (1971); *State v. Cooper*, 256 N.C. 372, 124 S.E. 2d 91 (1962). Under our law, except in those instances where G.S. 14-72 does not apply, whether a person who commits the crime of larceny is guilty of a felony or guilty of a misdemeanor depends on whether the stolen property exceeds the value of $200. It was held in *State v. Whaley*, 262 N.C. 536, 138 S.E. 2d 138 (1964), that "bills of indictment charging felonies, in which there has been a failure to use the word 'feloniously,' are fatally defective, unless the Legislature otherwise expressly provides."

In *State v. Jesse*, 19 N.C. 297 (1837), Chief Justice Ruffin held that the word "feloniously" in an indictment charging a felony has no synonym and admits of no substitute. However, Justice Bobbitt (later Chief Justice) in *State v. Cooper, supra,* said:

"True, 'felonious intent' is an essential element of the crime of larceny without regard to the value of the stolen property. The phrase, 'felonious intent,' originated when both grand larceny and petit larceny were felonies. Now, 'felonious intent,' in the law of larceny, does not necessarily signify an intent to commit a felony. For definitions of 'felonious intent,' as an element of the crime of larceny, see *S. v. Powell*, 103 N.C. 424, 9 S.E. 627; *S. v. Kirkland*, 178 N.C. 810, 101 S.E. 560; *S. v. Booker*, 250 N.C. 272, 108 S.E. 2d 426."

[3] It is not essential to use the word "feloniously" in a warrant charging a misdemeanor. It has been held in a misdemeanor case charging an assault with a deadly weapon that the use of

the word "feloniously" therein was surplusage and could be ignored. *State v. Hobbs,* 216 N.C. 14, 3 S.E. 2d 431 (1939).

[4-6]   In the case before us, the defendant is charged with stealing property of the value of less than $200, which is a misdemeanor. G.S. 14-72. In *State v. Cooper, supra,* "felonious intent" was held to be an essential element of the crime of larceny without regard to the value of the stolen property. And, where a special intent is an essential element of the crime charged, it must be alleged in the warrant or indictment. *State v. Miller,* 231 N.C. 419, 57 S.E. 2d 392 (1950) ; *State v. Friddle,* 223 N.C. 258, 25 S.E. 2d 751 (1943). However, the "felonious intent" as applied to the crime of larceny is the intent which exists where a person knowingly takes and carries away the personal property of another without any claim or pretense of right with the intent wholly and permanently to deprive the owner of his property and to convert it to the use of the taker or to some other person than the owner. *State v. McCrary,* 263 N.C. 490, 139 S.E. 2d 739 (1965) ; *State v. Booker,* 250 N.C. 272, 108 S.E. 2d 426 (1959). And, what is meant by "felonious intent" is a matter for the court to explain to the jury and no exact words are required to instruct the jury as to its meaning. *State v. Westry,* 15 N.C. App. 1, 189 S.E. 2d 618 (1972), *cert. denied,* 281 N.C. 763.

In the warrant herein it is alleged that the defendant did "unlawfully, wilfully, steal, take and carry away" the described property. In 50 Am. Jur. 2d, Larceny, § 2, it is stated:

"The word 'steal' has a uniform signification when used in connection with personal property, and in common as well as legal parlance, means the felonious taking and carrying away of the personal goods of another. 'Stealing' is taking without right or leave, with intent to keep wrongfully; that is, *to steal is to commit larceny.* * * *" (Emphasis added.)

In Black's Law Dictionary, 4th Ed., "steal" is defined as follows:

"This term is commonly used in indictments for larceny, ('take, *steal,* and carry away,') and denotes the commission of theft, that is, the felonious taking and carrying away of the personal property of another, and without right and without leave or consent of owner . . . and with intent to keep or make use wrongfully. * * *"

In Webster's Third New International Dictionary (1968), "steal" is defined in this manner:

"* * * 1a: to take and carry away feloniously and usu. observed: take or appropriate without right or leave and *with intent to keep* or make use of wrongfully . . . ." (Emphasis added.)

In other jurisdictions it has been held that an allegation in an indictment that the defendant "did steal, rob, take and carry away" the goods of another is equivalent to an allegation in the indictment of an intent to steal. *State v. Tierney,* 104 N.H. 408, 188 A. 2d 333 (1963); *State v. Hillis,* 145 Kan. 456, 65 P. 2d 251 (1937). See also, *In re Shelton,* 103 Ohio App. 436, 145 N.E. 2d 673 (1957). *Compare, Head v. Commonwealth,* 211 Ky. 41, 276 S.W. 1061 (1925).

[7]   In *State v. Williams,* 265 N.C. 446, 144 S.E. 2d 267 (1965), it was held that the allegation that the intent to convert the personal property stolen to the defendant's own use is not required to be alleged in a bill of indictment charging the felonious taking of goods from the person of another by the use of force or a deadly weapon. Similarly, in the case before us it was not necessary to allege in the warrant the exact words that the defendant intended to convert the personal property stolen to her own use. While no exact words are necessary to allege the required "felonious intent" in a warrant charging misdemeanor larceny, those who prepare warrants charging the misdemeanor of larceny would be well advised to use words clearly meaning "with the felonious intent to steal." However, we hold that the word "steal" as used in the warrant charging misdemeanor larceny in the case before us encompassed and was synonymous with the required "felonious intent" and was therefore sufficient to withstand the defendant's motion to quash.

Defendant next contends that the trial court erred in denying her motion to quash the warrant for the reason that there was no "verdict in the district court," the lack of which deprived the superior court of any derivative jurisdiction. Defendant has cited no authority in support of her contention, and we are of the opinion that her position is untenable.

The judgment sentencing defendant in the district court reads as follows:

"The defendant having entered a plea of not guilty to the offense charged, the court upon the trial of the case

finds the defendant _____ and imposes the following judgment: 9 mo Women Prison—Appeal to Superior Ct—500.00 Bond.

This the 1 day of Sept, 1971.

CHAS. H. MANNING

Magistrate or District Judge"

[8] The jurisdiction of the superior court on appeal from a conviction in district court is derivative. *State v. Walls,* 271 N.C. 675, 157 S.E. 2d 363 (1967); *State v. Thompson,* 2 N.C. App. 508, 163 S.E. 2d 410 (1968). Defendant may not be tried de novo in the superior court on the original warrant without a trial and conviction in the district court. *State v. Johnson,* 251 N.C. 339, 111 S.E. 2d 297 (1959).

G.S. 7A-290 provides in part:

"* * * Any defendant *convicted* in district court before the judge may appeal to superior court for trial de novo. * * *" (Emphasis added.)

[9] The issue before us is whether the defendant was "convicted" in district court within the meaning of G.S. 7A-290, where that portion of the blank form of the judgment relating to the disposition of the matter entered in district court was not filled out and did not contain an express determination of defendant's guilt. If the judgment in district court was void, then the superior court had no jurisdiction to enter its judgment after trial de novo, and in North Carolina, jurisdiction is essential to a valid judgment. *State v. Fisher,* 270 N.C. 315, 154 S.E. 2d 333 (1967); *State v. Byrd,* 4 N.C. App. 672, 167 S.E. 2d 522 (1969).

The record shows that in this case there was a trial, a judgment, and notice of appeal given in the district court. There is a presumption that the defendant would not have been sentenced before the end of his trial or on a verdict of not guilty, or on the declaration of a mistrial by the district judge. Neither could the defendant have appealed from a verdict of not guilty. It is apparent from the record in this case that the defendant was found guilty in the district court and from the sentence imposed appealed to the superior court.

[10] Viewing the record as a whole, we are of the opinion and so hold that a conviction and a determination of guilt was made

by the district court and understood by the defendant. In holding that defendant was "convicted," we note that the judgment in district court *sentenced* defendant to a term in prison and also *set bond for appeal* to the superior court. Our holding that defendant was determined guilty and convicted is consistent with the majority rule in other jurisdictions that an express adjudication of conviction or finding of guilt is not necessary if it is apparent from other matters in the record that the court made a judicial determination of conviction or guilt. See *Davis v. Utah Territory*, 151 U.S. 262, 38 L.Ed. 153, 14 S.Ct. 328 (1894); *State v. Apodaca*, 80 N.M. 155, 452 P. 2d 489 (1969); Annot., 69 A.L.R. 792 (1930); 21 Am. Jur. 2d, Criminal Law, § 531.

In the trial we find no prejudicial error.

No error.

Judges BROCK and BRITT concur.